UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to case nos.:<br>18-cv-07828; 19-cv-01785; 19-cv-01867; 19-cv-01893; 19-cv-01781; 19-cv-01783; 19-cv-01866; 19-cv-01895; 19-cv-01794; 19-cv-01865; 19-cv-01904; 19-cv-01798; 19-cv-01869; 19-cv-01922; 19-cv-01800; 19-cv-01788; 19-cv-01870; 18-cv-07827; 19-cv-01791; 19-cv-01792; 19-cv-01928; 19-cv-01926; 19-cv-01868; 18-cv-07824; 19-cv-01929; 19-cv-01803; 19-cv-01806; 19-cv-01906; 19-cv-01801; 19-cv-01894; 19-cv-01808; 19-cv-01810; 19-cv-01809; 18-cv-04833; 19-cv-01911; 19-cv-01898; 19-cv-01812; 19-cv-01896; 19-cv-01871; 19-cv-01813; 19-cv-01930; 18-cv-07829; 18-cv-04434; 19-cv-01815; 19-cv-01818; 19-cv-01931; 19-cv-01918; 19-cv-01873; 19-cv-01924; 19-cv-10713; 21-cv-05339. | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**PLAINTIFF SKATTEFORVALTNINGEN'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE THE PROPOSED TESTIMONY OF DEFENSE EXPERTS MICHAEL S. ROSS, C. FREDERICK REISH, <u>AND KASPER B. PILGAARD</u>**

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
Gregory C. Farrell
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen (Customs and Tax Administration of the Kingdom of Denmark)*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................2

    I.      Mr. Ross's opinions are inadmissible. ...................................................................2

    II.     Mr. Reish's opinions are inadmissible..................................................................5

    III.    Mr. Pilgaard's opinions are inadmissible..............................................................8

CONCLUSION..............................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adv. Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 31 (S.D.N.Y. 2014)......................3

*Camarata v. Experian Info. Sols., Inc.*, No. 16 Civ. 132 (AT), 2018 WL 1738335
    (S.D.N.Y. Mar. 5, 2018) .........................................................................................................2, 3

*In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164 (S.D.N.Y. 2009).................................5, 6

*Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992) ....................................................................................6

*Joffe v. King & Spalding LLP*, No. 17-CV-3392 (VEC), 2019 WL 4673554
    (S.D.N.Y. Sept. 24, 2019) ..........................................................................................................2

*In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396 (S.D.N.Y. 2016) ...........................6, 7

*Music Sales Corp. v. Morris*, 73 F. Supp. 2d 364 (S.D.N.Y. 1999) .................................................2

*In re Nameda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152
    (S.D.N.Y. 2018) ........................................................................................................................6

*In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) .........................................7

*Rowe Ent., Inc. v. William Morris Agency, Inc.*, No. 98 Civ. 8272(RPP),
    2003 WL 22272587 (S.D.N.Y. Oct. 2, 2003) ............................................................................2

*Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33 (S.D.N.Y. 2016) ......................................2, 4

*In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-01570 (GBD) (SN),
    2023 WL 2366854 (S.D.N.Y. Mar. 6, 2023) ..............................................................................9

*United States v. Kurland*, No. 20-CR-306 (S-1) (NGG), 2022 WL 2669897
    (E.D.N.Y. July 11, 2022) ...........................................................................................................6

**PRELIMINARY STATEMENT**

Defendants fail to show that their legal experts—Mr. Ross, Mr. Reish, and Mr. Pilgaard—offer anything but impermissible interpretations of law and ultimate conclusions reserved for the Court or jury. Their proposed testimony is therefore inadmissible.

First, defendant Ben-Jacob's argument that Mr. Ross's testimony interpreting and applying the New York Rules of Professional Conduct is, despite all appearances, testimony on customs and practices in the legal industry fails because nowhere in his report does Mr. Ross provide any such customs and practices opinions.

Second, Mr. Reish's proposed testimony on supposed IRS enforcement practices, *i.e.*, that the IRS would not disqualify the defendant plans for the reasons SKAT alleged, is a thinly veiled attempt to instruct the jury on and provide legal conclusions with respect to the Internal Revenue Code's plan qualification requirements. Mr. Reish's opinions concerning the IRS's audit of the RJM plan and the "no change" letter it issued are inadmissible for the same reason. Mr. Reish seeks to tell the jury what result it should reach with respect to SKAT's claims that the plans violated the qualification requirements. And even if any of this testimony were admissible, the Court should exclude it under Rule 403 because it is likely to confuse and mislead the jury into thinking that the IRS already has determined the plans were qualified or that the statutory requirements for qualification do not matter if the IRS subsequently would not have disqualified the plans.

Finally, defendants fall short in their attempt to transform Mr. Pilgaard's Danish "legal opinion[s]" into admissible expert testimony. Much of Mr. Pilgaard's proposed testimony is inadmissible legal analysis or bound up in it. And any remaining factual testimony concerns lay matters a jury will not need expert testimony to understand or is relevant only to Mr. Pilgaard's meritless Danish legal arguments, not any issue the jury will decide.

**ARGUMENT**

**I.     Mr. Ross's opinions are inadmissible.**

Mr. Ross's report responds to "the attorney ethics issues raised in" SKAT's expert Marcia Wagner's report, (Ross Report ¶ 2), and consists of (i) an inadmissible 16-page statement of "assumed facts" that Ben-Jacob's attorneys provided to Mr. Ross (*see* SKAT Br. 9-10 (citing *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 45 (S.D.N.Y. 2016))); (ii) Mr. Ross's inadmissible legal interpretation of the New York Rules of Professional Conduct (*see* SKAT Br. 8 (citing *Joffe v. King & Spalding LLP*, No. 17-CV-3392 (VEC), 2019 WL 4673554, at *17 (S.D.N.Y. Sept. 24, 2019))); and (iii) Mr. Ross's inadmissible application of those rules to his assumed facts to reach his conclusions that Ben-Jacob did not violate the rules (*see* SKAT Br. 9 (citing *Music Sales Corp. v. Morris*, 73 F. Supp. 2d 364, 381 (S.D.N.Y. 1999))).

In response to SKAT's motion to exclude this plainly inadmissible testimony, Ben-Jacob asserts for the first time that Mr. Ross will instead offer "opinions explaining customs and practices in the legal industry." (Defs. Br. 3.) But nowhere in his report does Mr. Ross opine on, or even mention, any such customs and practices. And Mr. Ross may not offer at trial "[o]pinions that [were] not disclosed in [his] report." *Camarata v. Experian Info. Sols., Inc.*, No. 16 Civ. 132 (AT) (HBP), 2018 WL 1738335, at *1 (S.D.N.Y. Mar. 5, 2018) (quotation omitted). Nor may he testify as to undisclosed "additional grounds" for his opinions. *Rowe Ent., Inc. v. William Morris Agency, Inc.*, No. 98 Civ. 8272(RPP), 2003 WL 22272587, at *1 n.3 (S.D.N.Y. Oct. 2, 2003). In other words, his "report operates to limit the scope of the testimony that can be

elicited from" him at trial. *Camarata*, 2018 WL 1738335, at *1 (quotation omitted) (collecting cases).[1]

Thus, the select paragraphs Ben-Jacob identifies as supposedly reflecting Mr. Ross's "customs and practices" opinions instead set forth Mr. Ross's interpretation of attorney ethics rules and his legal conclusions with respect to how those rules apply to Ben-Jacob's conduct. (Defs. Br. 3-4 (citing Ross Report ¶¶ 8, 20, 21, 40-42, 46, 47, 51, 52, 77-79, 84, 87, 91, 95, 110).)[2]  For instance, Mr. Ross opines therein that Ben-Jacob was "permitted to" (Ross Report ¶¶ 8, 20, 97, 110), "ethically permitted to" (*id.* ¶ 84), or "entitled to" (*id.* ¶¶ 41, 42) rely on his clients' representations; that he "reasonably relied on" his clients "to conduct their own due diligence" (*id.* ¶¶ 20, 110); and that he "did not have a duty" (*id.* ¶¶ 41, 46), had "no obligation" (*id.* ¶¶ 77, 95), or "was not required" (*id.* ¶ 79) under the ethics rules to undertake certain responsibilities.  Mr. Ross explicitly relies on and applies the ethics rules, not customs or practices in the legal industry, to reach these conclusions.  (*See, e.g., id.* ¶¶ 51-52 (applying New York Rules of Professional Conduct 1.2(c) to assumed facts), 79 (discussing scope of representation under ethics rules), 84 (citing analysis of ethics rules regarding attorney competence and diligence for opinion that "Ben-Jacob was ethically permitted to rely upon his clients'" representations).)

---

1. *See also Adv. Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 31, 36 (S.D.N.Y. 2014) (excluding expert testimony that exceeded bounds of expert's report), *objections overruled*, 301 F.R.D. 47 (S.D.N.Y. 2014).

2. Ben-Jacob indicates that the paragraphs he identifies are just examples of Mr. Ross's supposed opinions on customs and practices in the legal industry, (Defs. Br. 3-4 ("*see, e.g.*, Ross Report")), but other than references to paragraphs 97 and 109 elsewhere in his brief (Defs. Br. 5-6), SKAT cannot tell which other of Mr. Ross's ethics opinions Ben-Jacob contends actually are opinions on legal industry customs and practices.  SKAT therefore addresses herein only the paragraphs Ben-Jacob explicitly identified.  As SKAT explained in moving to exclude the entirety of Mr. Ross's proposed testimony, the rest of Mr. Ross's proposed testimony is inadmissible for the same reasons, *i.e.*, it consists entirely of Mr. Ross's legal interpretation of ethics rules and his application of those rules to his assumed facts.

3

Nor did Mr. Ross, as Ben-Jacob contends, opine that "the engagement of Ben-Jacob . . . for a limited scope arrangement without a formal written agreement is not inconsistent with customs in the legal industry." (Defs. Br. 3-4.)  Instead, he offered his legal interpretation of New York Rule of Professional Responsibility 1.2, (Ross Report ¶¶ 47-50), noted that "courts determine the scope of the [attorney-client] relationship by examining the parties' course of dealings and communications," (*id.* ¶ 50), and then undertook to determine the scope of Ben-Jacob's representation based on his understanding of the rules and his assumed facts.  (*Id.* ¶¶ 51, 79, 91, 94.)  In doing so, Mr. Ross invades "the province of the court" to instruct the jury as to the law and "supplant[s] the role of counsel in making argument at trial, and the role of the jury in interpreting the evidence." *Scott*, 315 F.R.D. at 48 (quotation omitted).  And along the way, Mr. Ross offers inadmissible opinions about what would have been "apparent" to Ben-Jacob's clients and what they "would have understood."  (Ross Report ¶ 91.)[3]

Ben-Jacob highlights a stray statement in Mr. Ross's report that "every major law firm, every day, can be seen to have its lawyers asserting aggressive positions in transactional and regulatory matters with respect to issues that are in a gray area." (Defs. Br. 6 (quoting Ross Report ¶ 109).)  But that is not an opinion Mr. Ross proffered grounded in an analysis of the customs and practices of the legal industry.  It was a rhetorical point in his argument that Ben-Jacob did not violate New York Rule of Professional Conduct 1.2(d) because in his "opinion . . . Ben-Jacob did not knowingly counsel or assist his clients in illegal or fraudulent conduct." (Ross Report ¶ 109.)  And even if that isolated remark could be considered testimony regarding

---

3. *Id.* ("It would have been apparent to the Argre Principals from a review of the bills submitted to them, or this memorandum, that Ben-Jacob and Kaye Scholer were not reviewing trading strategy issues and other matters outside the scope of retention.  These facts confirm that the Argre Principals would have understood the limited scope of Kaye Scholer's representation, as required by Rule 1.2(c) . . .").

4

"customs and practices" of the legal industry, it lacks any basis for its all-encompassing generality and falls far short of any explanation that would assist the jury in understanding norms within the legal industry, let alone "aid the jury in evaluating Ben-Jacob's scienter." (Defs. Br. 5.)

II.     **Mr. Reish's opinions are inadmissible.**

As SKAT explained in moving to exclude Mr. Reish's testimony and in its opposition to defendants' motion to exclude the rebuttal testimony of SKAT's expert Ms. Wagner, Mr. Reish's opinions concerning the IRS's enforcement practices and audit of the RJM plan are replete with inadmissible legal opinions and conclusions and irrelevant speculation. (SKAT Br. 10-13; SKAT Opp. Br. 8-10.)

Defendants implicitly acknowledge that Mr. Reish will offer the jury his legal opinions and conclusions about Internal Revenue Code plan qualification requirements in arguing that experts "may testify about 'general . . . regulatory requirements and procedures' and offer opinions as to a party's 'compliance therewith.'" (Defs. Br. 9 (quoting *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 190-91 (S.D.N.Y. 2009).) But the circumstances in which courts have allowed such testimony are far different from these cases. For example, in *Fosamax*, the court permitted expert testimony "about general FDA regulatory requirements and procedures" and the defendant pharmaceutical company's "compliance therewith" because such testimony would "be helpful to the jury" as that "complex regulatory framework . . . informs the standard of care in the pharmaceutical industry." 645 F. Supp. 2d at 191. Such expert testimony, the court held, would not usurp the role of the court or the jury because the cases were "governed by . . . state law theories of negligence and strict liability," not the "federal regulations" on which the expert opined. *Id.* at 191 n.16. Thus, "[e]xpert testimony on regulatory compliance" would "assist the jury in determining whether [the defendant] acted as a reasonably prudent

5

pharmaceutical manufacturer." *Id.*[4]

Here, by contrast, SKAT's claims that the defendants' tax refund claims misrepresented that the plans were qualified under the Internal Revenue Code turn directly on the plans' compliance with the Code's requirements on which Mr. Reish intends to testify. And notwithstanding defendants' assertion to the contrary, "the IRS's procedures and practices concerning plan qualification" are not at issue in these cases. (Defs. Br. 9.) The plans were not required to (and did not) obtain IRS approval of their operational compliance with the Code's qualification requirements, such that Mr. Reish may offer helpful testimony to the jury explaining regulatory requirements and IRS procedures. Rather, Mr. Reish offers inadmissible legal conclusions to the jury through the guise of his opinions that the IRS would not have disqualified the plans for the reasons SKAT alleged the plans violated the Code's requirements.

Such testimony undoubtedly rests on Mr. Reish's legal interpretation and conclusions, irrespective of whether he discusses "statutes, caselaw, and the like." (Def. Br. 11; *see United States v. Kurland*, No. 20-CR-306 (S-1) (NGG), 2022 WL 2669897, at *15 (E.D.N.Y. July 11, 2022) ("the interpretation of legal ethics rules, whether accompanied by a discussion of statutes and case law or not, is a matter reserved for jury instructions").) Mr. Reish may not "communicate[] a legal standard—explicit or implicit—to the jury." *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992). Thus, Mr. Reish's "testimony encompassing . . . ultimate legal

---

[4]. *See also In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 467, 479 n.78 (S.D.N.Y. 2016) ("this case is not governed by federal regulations but by state law theories of negligence and strict liability. Expert testimony regarding [defendant's] compliance with FDA regulations therefore will not usurp the Court's role in explaining the law to the jury, but will assist the jury in determining whether [defendant] acted as a reasonably prudent pharmaceutical manufacturer"; "evidence of violation of FDA standards may be evidence of, but does not necessarily establish, negligence" (citations and quotations omitted)); *In re Nameda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 167, 184 (S.D.N.Y. 2018) (permitting expert testimony in antitrust case "explain[ing] the procedures under the complex law governing approvals of generic drugs" that did not "provide legal conclusions or opine on whether Defendants violated" the regulations (quotation omitted)).

conclusion[s] based upon the facts of the case is not admissible *and may not be made so simply because it is presented in terms of industry practice.*"  In re Rezulin Prods. Liab. Litig., 309 F. Supp. 2d 531, 558 (S.D.N.Y. 2004) (emphasis in original).

Mr. Reish's opinions that the IRS would not have disqualified the plans based on the Code violations SKAT alleged are in any event inadmissible speculation.  *See In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d at 466 (expert testimony "as to what type of label the FDA would or would not have ultimately accepted or rejected" was "impermissible speculation as to the state of mind of the FDA").  And they are unfairly prejudicial in that they are likely to confuse the jury into thinking the relevant question is whether the IRS would have disqualified the plans for their violations rather than the plans' compliance with the Code's requirements.  (SKAT Opp. Br. 9.)

Finally, Mr. Reish's proposed testimony concerning the IRS audit of the RJM plan and its issuance of a "no change" letter to the plan is similarly flawed.  (SKAT Br. 12-13; SKAT Opp. Br. 11.)  Mr. Reish's opinion is that "[t]he issuance of a 'no change' letter means that the IRS did not find any qualification defects in the form or operation of the plan," and that he is "not aware of any reason that, had the IRS undertaken an audit of any other plans with arrangements similar to the RJM Plan, it would not have issued a 'no change' letter similar to the one issued with respect to the RJM Plan."  (Reish Report ¶¶ 43-44.)  Such testimony would simply convey to the jury Mr. Reish's legal conclusions that the RJM plan and all the other defendant plans complied with the Code's qualification requirements and his improper speculation about the conclusions the IRS would have reached if it had audited the other plans.

And even assuming *arguendo* Mr. Reish's testimony on the RJM audit and the "no change" letter were admissible, the Court should preclude it under Rule 403.  The entirety of Mr.

7

Reish's testimony on such matters would confuse and mislead the jury in suggesting that the IRS already has determined that the plans met the Code's qualification requirements when the IRS has done no such thing. The "no change" letter is not a determination of any plan's qualifications.

For instance, in *Cervecería Modelo de México, S. de R.L. de C.V. v. CB Brand Strategies, LLC*, the Second Circuit affirmed the exclusion of the "DOJ's finding" on the meaning of a term where such evidence "might prompt the jury to defer to DOJ's views rather than interpret the definition . . . under the Sublicense" at issue. No. 23-810-CV, 2024 WL 1253593, at *3 (2d Cir. Mar. 25, 2024). Likewise, here Mr. Reish's testimony that the IRS has already determined that the plans were qualified may prompt the jury to defer to the IRS's supposed views rather than determine itself whether the plans complied with the Code's requirements.

### III.   Mr. Pilgaard's opinions are inadmissible.

Defendants do not dispute (nor can they) that Mr. Pilgaard's declarations are "legal opinion[s] on legal matters" based on his "knowledge of Danish law." (Apr. 27 Decl. ¶ 2; *see also* June 27 Decl. ¶ 1.) Instead, defendants attempt to repurpose certain of his legal opinions as "factual information" to present to the jury. (*See* Defs. Br. 15.) But Mr. Pilgaard's testimony remains inadmissible legal interpretation or conclusions, or consists of lay matters that do not require expert testimony. (SKAT Br. 13-16.)

For instance, the portions of Mr. Pilgaard's proposed testimony that concern "the structure and operations of the Danish government," (Defs. Br. 15), consist mainly of Mr. Pilgaard's interpretation of the Constitution of Denmark and various Danish statutes. (*See* Apr. 27 Decl. ¶¶ 13-51, 53-54.) And his testimony concerning such matters, to the extent it can be considered factual, is relevant only to defendants' meritless Danish legal argument that SKAT is a distinct legal entity from the rest of the Kingdom of Denmark.

Mr. Pilgaard's proposed testimony concerning the contents of SKAT's guidelines and the dividend withholding tax reclaim form defendants used consists of lay matters that there is no need for an expert to explain. (Apr. 27 Decl. ¶¶ 131-35, 201.) Defendants can convey the information in these documents by showing the jury or a fact witness the documents themselves, to the extent they are admissible. "[A] juror could just as easily understand the evidence by reading" it, without Mr. Pilgaard's recitation. *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-01570 (GBD) (SN), 2023 WL 2366854, at *6 (S.D.N.Y. Mar. 6, 2023). And Mr. Pilgaard's proposed testimony about "what SKAT did not request from dividend withholding tax reclaim applicants during the period at issue," (Defs. Br. 17 (emphasis omitted)), is just his disputed Danish legal opinions about the requirements for a tax refund. (*See, e.g.*, Apr. 27 Decl. ¶ 136 ("It was not a requirement from the Danish Tax Authorities that dividend withholding taxes had actually been paid to the Danish tax authorities to entitle a claimant to a refund.").) Moreover, Mr. Pilgaard's proposed testimony as to SKAT's post-2015 refund requirements, (Apr. 27 Decl. ¶¶ 138-40), seek to put before the jury evidence of SKAT's subsequent remedial measures inadmissible under Federal Rule of Evidence 407.[5]

Mr. Pilgaard's testimony about Danish share ownership, dematerialization of Danish shares, and SKAT's guidance on the beneficial owner of dividends in the context of securities lending agreements are relevant only to his meritless legal argument that final and binding agreements can create beneficial owners of shares that do not exist. (Apr. 27 Decl. ¶¶ 148, 149, 151, 201.) The same is true with respect to Mr. Pilgaard's arguments that there can be "claims to ownership of shares in excess of the number of shares issued by [a] company" and the "GameStop" "example." (June 27 Decl. ¶¶ 85-86.) And his opinion that "custodians in

---

5. SKAT intends to move *in limine* to preclude evidence of such remedial measures.

Denmark may engage in net settlement," (Apr. 27 Decl. ¶ 207), is irrelevant for two independent reasons: *first*, neither defendants nor SKAT contend that the defendants' purported trading involved any Danish custodian; and, *second*, as SKAT has explained at pages one through nine of its reply brief in support of its motion to exclude the opinions of defense expert witness Emre Carr, a custodian can engage in net settlement only to the extent that it has an already existing position in shares or cash to offset against an opposite position, not where the custodian and counterparties have no shares or cash to begin with.

## CONCLUSION

For the reasons set forth above and in SKAT's Memorandum of Law in Support of its Motion, SKAT respectfully requests that the Court grant its motion to exclude Mr. Ross, Mr. Reish, and Mr. Pilgaard's expert testimony.

| | |
|---|---|
| Dated: New York, New York<br>July 19, 2024 | HUGHES HUBBARD & REED LLP<br><br>By: /s/ Marc A. Weinstein<br>William R. Maguire<br>Marc A. Weinstein<br>Neil J. Oxford<br>Dustin P. Smith<br>Gregory C. Farrell<br>One Battery Park Plaza<br>New York, New York 10004-1482<br>Telephone: (212) 837-6000<br>Fax: (212) 422-4726<br>bill.maguire@hugheshubbard.com<br>marc.weinstein@hugheshubbard.com<br>neil.oxford@hugheshubbard.com<br>dustin.smith@hugheshubbard.com<br>gregory.farrell@hugheshubbard.com<br><br>*Counsel for Plaintiff Skatteforvaltningen (Customs and Tax Administration of the Kingdom of Denmark)* |