USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8/26/24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re

CUSTOMS AND TAX ADMINISTRATION OF THE
KINGDOM OF DENMARK (SKAT) TAX REFUND                    18-md-2865 (LAK)
LITIGATION

This document applies to:
18-cv-07824; 18-cv-07827; 18-cv-07828;
18-cv-07829; 19-cv-01781; 19-cv-01783;
19-cv-01785; 19-cv-01788; 19-cv-01791;
19-cv-01792; 19-cv-01794; 19-cv-01798;
19-cv-01800; 19-cv-01801; 19-cv-01803;
19-cv-01806; 19-cv-01808; 19-cv-01809;
19-cv-01810; 19-cv-01812; 19-cv-01813;
19-cv-01815; 19-cv-01818; 19-cv-01866;
19-cv-01867; 19-cv-01868; 19-cv-01869;
19-cv-01870; 19-cv-01871; 19-cv-01873;
19-cv-01894; 19-cv-01896; 19-cv-01918;
19-cv-01922; 19-cv-01926; 19-cv-01928;
19-cv-01929; 19-cv-01931; 21-cv-05339
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION DENYING
## BEN-JACOB MOTION FOR SUMMARY JUDGMENT

Appearances:

William R. Maguire
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
Gregory C. Farrell
HUGHES HUBBARD & REED LLP
*Attorneys for Plaintiff*

Thomas E.L. Dewey
Sean K. Mullen
DEWEY PEGNO & KRAMARSKY LLP

Elliot R. Peters
Julia L. Allen
KEKER, VAN NEST & PETERS LLP

*Attorneys for Defendant Michael Ben-Jacob*

LEWIS A. KAPLAN, *District Judge.*

Michael Ben-Jacob argues that the claims against him contained in thirty-nine complaints included in this multi-district litigation ("MDL") pending in this Court are time barred under the terms of a tolling agreement executed between the parties. In the alternative, he argues that the claims against him in one of the cases, *Skatteforvaltningen v. Ben-Jacob* (the "June 2021 Complaint" or "2021 Complaint"),[1] are barred by the applicable New York statute of limitations. For the reasons explained below, his motion for summary judgment[2] is denied in all respects.

### *Facts*

These and other actions in this MDL have been brought by the Customs and Tax Administration of the Kingdom of Denmark ("Skatteforvaltningen" or "SKAT") to recover funds allegedly obtained from it by fraud. SKAT alleges that the defendants — pension plans and their principals, agents, and representatives — engaged in a fraudulent tax refund "scheme" whereby they "falsely represented that the plans owned shares in Danish companies, that [Danish] taxes had been withheld on the dividends, and as tax-exempt entities, they were entitled to refunds."[3] SKAT alleges further that, in consequence of these false representations, it paid to defendants over 12.7 billion Danish Kroner, the equivalent of approximately $2.1 billion U.S. dollars, to which they had no legitimate claim.

Fact discovery in the entire MDL proceeding closed in December 2021 and expert

---

[1]    No. 21-cv-05339.

[2]    Dkt 1000. Unless otherwise noted, all docket citations are to No. 18-md-2865.

[3]    Dkt 1 at 1.

3

discovery in April 2022.[4]  In November 2023, the Court denied motions for summary judgment filed by seven "bellwether" defendants, including Ben-Jacob.[5]  Earlier this year, the Court selected a subset of cases to be tried in "Trial One" set to begin on January 7, 2025.  Among this subset are the thirty-nine against Ben-Jacob that are the subject of this motion.[6]

Although the Court assumes familiarity with this MDL, it sets forth the following facts, which are particularly relevant to the disposition of this motion.

A.    The Danish Tax Regime and the Tax Refund Claim Strategy

Danish tax law requires Danish companies to withhold for tax purposes a percentage of dividends payable to shareholders.  Pursuant to a double-taxation treaty between the United States and Denmark, U.S. pension plans that are tax exempt in the United States may seek refunds from Denmark for taxes withheld on Danish securities they own.  In order to obtain those refunds, they must file refund claims with SKAT.

It is this refund mechanism that, SKAT now alleges, gave rise to this case.  As alleged, Sanjay Shah, through his company Solo Capital, conceived of and executed a fraudulent tax refund scheme.  In brief, Shah recruited others to establish tax-exempt U.S. pension plans to engage in fictitious trading in Danish securities in order to create the false appearance that they owned those securities.  These plans then claimed to be entitled to refunds of taxes withheld from dividends purportedly paid to them as owners of the securities.  But these dividends never were paid

---

[4]

Dkt 675 (Pretrial Order No. 29).

[5]

Dkt 924 [*In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-cv-04051, 2023 WL 8039623 (S.D.N.Y. Nov. 20, 2023)].

[6]

Dkt 961 (Pretrial Order No. 34).

4

— and thus no taxes ever were withheld — because the plans never owned the securities to begin with.  In exchange for his role in the scheme, Shah received significant fees from the pension plans, often the lion's share of scheme proceeds.[7]

This Court summarized previously SKAT's allegations regarding the tax refund claim process with which defendant allegedly was involved:

> "[T]he defendants and non-parties participated in a coordinated scheme to submit fraudulent applications to SKAT for tax refunds.  First, the incorporator created limited liability companies associated with the plans that would submit tax refund applications to SKAT.  Second, the authorized representatives signed powers of attorney on behalf of the plans authorizing the non-party payment agents to act on behalf of the plans in relation to the refund claims.  The payment agents then completed and submitted the applications, each of which included, among other things, a claim form.  The claim form represented that the claimant: (1) owned shares in a Danish company; (2) had received dividends net of withholding tax; (3) was entitled to a refund under the U.S.-Denmark Treaty; and (4) was a U.S. pension plan exempt from U.S. taxation . . . . Finally, the payment agents received the tax refunds from SKAT and distributed the proceeds to the claimants and other participants in the fraud."[8]

---

[7]  See Dkt 1082 at 4 [*In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, No. 18-MD-2865 (LAK), 2024 WL 3184978, at *1 (S.D.N.Y. June 26, 2024)]; Dkt 817 at 6–37.

[8]  Dkt 62 at 5–6 [*In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 308–09 (S.D.N.Y. 2019)] (internal quotation marks and citations omitted).

SKAT alleges that "these refund claims were fraudulent because the defendant plans did not own shares in the Danish companies that they purported to own."[9]

B.      *Schedule A, Schedule B, and Maple Point Pension Plans*

Relevant here, SKAT alleges that the three groups of pension plans described below were among those that filed fraudulent tax refund claims.

From 2012 to 2014, the principals of Argre Management LLC — defendants Van Merkentseijn and Markowitz and non-parties Jerome Lhote and Matthew Stein — participated in what SKAT alleges was a scheme whereby they submitted fraudulent tax refund claims on behalf of thirty pension plans, which are referred to as the "Schedule A Plans."[10]  The principals of Argre engaged the law firm Kaye Scholer LLP, of which defendant-movant Ben-Jacob then was a partner, to advise them on the refund claims.[11]  Ben-Jacob was not identified in any of the Schedule A Plans' claim documents filed with SKAT.[12]

In 2014, the Argre principals split into two groups, each of which separately continued to file tax refund claims with SKAT.[13]  Stein and Lhote formed Maple Point LLC to pursue this strategy, filing claims on behalf of a host of plans referred to below as the "Maple Point

---

[9]

    *Id.* at 6 [356 F. Supp. 3d at 309].

[10]

    Dkt 1023 (SKAT Resp. to 56.1 Stmt.) at ¶¶ 1–2.

[11]

    *Id.* at ¶ 3.  The parties dispute the extent to which Kaye Scholer was engaged in the alleged scheme.

[12]

    Dkt 1021 (SKAT Opp'n. Mem.) at 4.

[13]

    Dkt 1023 (SKAT Resp. to 56.1 Stmt.) at ¶ 4.

6

Plans."[14]  Ben-Jacob was not involved with the Maple Point Plans' claims.[15]  Van Merkentseijn and

Markowitz, meanwhile, filed claims on behalf of thirty-nine other plans, referred to as the "Schedule

B Plans."[16]  At least some of the Schedule B Plans identified Ben-Jacob as their Authorized

Representative and/or used Ben-Jacob's office address in claims filed with SKAT.[17]

C.      *SKAT's Investigation and the Tolling Agreements*

In 2015, SKAT learned that it might be the victim of fraudulent claims for dividend

tax refunds.[18]  It paused paying refund claims and began to investigate.[19]

On April 13, 2018, SKAT entered into a tolling agreement with 118 pension plans,

agents, and representatives, including Ben-Jacob, regarding litigation related to "repayment of

withheld dividend tax."[20]  Under the terms of the agreement:

"any statutes of limitations, statutes of repose or other time-related claim or defense

*that would expire or become applicable* during that period of time [in which the

Agreement was in effect] . . . relating in any way to SKAT's potential claims . . . ,

---

14

*Id.* at ¶ 5.

15

*Id.* at ¶ 25.

16

*Id.* at ¶ 6.

17

*The Stor Capital Consulting LLC 401K Plan*, No. 18-cv-04434, ECF No. 1 (complaint) at ¶ 34.

18

*Id.* at ¶ 7.

19

*Id.* at ¶ 8; Dkt 1043 (Ben-Jacob Resp. to 56.1 Stmt.) at ¶¶ 1–2.

20

Dkt 1023 (SKAT Resp. to 56.1 Stmt.) at ¶¶ 9–10.

shall be and are tolled and waived and that any such statutes or time-related claims or defenses that would have expired or become applicable during such period shall expire or become applicable only at the conclusion of sixty (60) days from the expiration of this agreement in accordance with its terms . . . .

The Expiration Date of this agreement shall be the earlier of (A) August 1, 2018, (B) the filing of any legal proceeding against any Covered Party, but only with respect to the Covered Party or Parties named as a defendant in such proceeding, or (C) thirty days after any Party gives written notice to any other Party of its wish to terminate this Agreement with respect to that Party."[21]

Subsequently, the parties extended the agreement through December 21, 2018.[22]

### D.    *SKAT Brings Suits*

In May and June 2018, SKAT filed five actions against Schedule B Plans and associated individual defendants for filing fraudulent dividend tax refund claims.[23]  Only one of the five, *Skatteforvaltningen v. The Stor Capital Consulting LLC 401K Plan*, named Ben-Jacob among its defendants.[24]

The *Stor* complaint alleged that Ben-Jacob acted as the plan's "Authorized Representative" and "executed at the direction of, and on behalf of, Defendant Stor Capital a 'Power

---

[21]

    *Id.* at ¶ 9(b)–(c) (emphasis added).

[22]

    *Id.* at ¶ 11.

[23]

    *Id.* at ¶ 12.

[24]

    No. 18-cv-04434, ECF No. 1 (complaint).

of Attorney' . . . that granted" a non-party payment agent authority to act on Stor's behalf to take actions "which may be required . . . for or in connection with the provision of any tax services provided to Stor Capital from time to time, including the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts . . . ."[25]  The complaint alleged also that "[t]he Defendants acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds."[26]  But the *Stor* complaint did not allege that Ben-Jacob himself had made any false statements to SKAT.

Between June 2018 and March 2019, SKAT brought thirty-four more actions against other Schedule B Plans and their associated individuals for fraud.  Ben-Jacob was named in twenty-eight of these actions.[27]  With regard to Ben-Jacob, these actions made allegations substantially similar to those in *Stor*.[28]

By May 2019, SKAT filed also actions against ten Schedule A Plans and associated

---

[25]

*Id.* at ¶¶ 39–40.

[26]

*Id.* at ¶ 58.

[27]

Dkt 1023 (SKAT Resp. to 56.1 Stmt.) at ¶ 16.

In April 2020, the ten complaints against Schedule B Plans that did not name Ben-Jacob — four filed in the first tranche of suits and six filed in the second tranche — were amended to include Ben-Jacob.  Those amended complaints alleged that Ben-Jacob's role in the filing of fraudulent tax refund claims was significantly more extensive than previously was alleged.  These allegations are not particularly germane because they do not evidence SKAT's knowledge of Ben-Jacob's conduct more than two-years before the 2021 Complaint was filed, the relevant inquiry with regard to the timeliness of that complaint.

[28]

*E.g.*, *Skatteforvaltningen v. Ballast Ventures LLC Roth 401(K) Plan*, No. 19-cv-01781, ECF No. 1 (complaint).

9

individuals.  Several of those complaints named Van Merkensteijn, Richard Markowitz, and their wives.[29]  And by November 2019, SKAT sued another fourteen Schedule A Plans and associated individuals.[30]  Ben-Jacob was not named in any of these actions against Schedule A Plans.[31]

Also in May 2019, SKAT entered into a settlement agreement with Maple Point (the "Maple Point Settlement").  It resolved all claims against Maple Point, the Maple Point Plans, and former Argre principals Stein and Lhote, among others.[32]  The Maple Point Settlement excluded from its release of liability a "[n]on-exhaustive list of parties."[33]  Ben-Jacob was among the thirteen individuals expressly excluded.[34]

In early 2021, defendants Van Merkensteijn and Markowitz asserted an advice of counsel defense, thereby "waiv[ing] the attorney-client privilege with respect to their communications with Michael Ben-Jacob and other attorneys."[35]  Over the ensuing months, they produced to SKAT "communications and documents, previously withheld as privileged, that

---

[29]     Dkt 1023 (SKAT Resp. to 56.1 Stmt.) at ¶¶ 18–19.

[30]     *Id.* at ¶ 20.

[31]     *Id.* at ¶ 21.

[32]     *Id*.

[33]     Dkt 1006-6 (Maple Point Settlement) at 6.

[34]     *Id.* at Ex. 3B at 12 [PDF page 42].

[35]     Dkt 1043 (Ben-Jacob Resp. to 56.1 Stmt.) at ¶ 3.

revealed Ben-Jacob's involvement in the Schedule A Plans' fraud."[36]

On June 16, 2021, SKAT filed the two-count June 2021 Complaint against Ben-Jacob arising from his participation in the tax refund claims of thirty Schedule A Plans.  That complaint, which alleges conspiracy to defraud and aiding and abetting fraud, charges that Ben-Jacob "played a central role" in the fraud.[37]  More specifically, it alleges:

> "Ben-Jacob designed a partnership structure that allowed the principals of Argre . . . to recruit friends, family members, and colleagues to set up additional plans to submit refund applications to SKAT.  The partnership structure Ben-Jacob designed enabled the Principals to retain control of the plans that the recruits agreed to set up, and to take 90% to 95% of the proceeds that these additional plans obtained from Denmark."[38]

The complaint alleges also that Ben-Jacob helped to execute this design by "structuring webs of LLCs, Plans, partnerships, and other U.S. entities through which the fraud on SKAT was accomplished."[39]  Ben-Jacob did these things, according to the complaint, with full knowledge of the fraudulent purpose of these entities and the illegitimacy of their refund claims.[40]

---

[36]

    *Id.* at ¶ 4.

[37]

    *Ben-Jacob*, 21-cv-05339, ECF No. 1 (complaint) at ¶ 16.

[38]

    *Id.* at ¶ 5.

[39]

    *Id.* at ¶ 43.

[40]

    *Id.* at ¶ 34.

*Discussion*

## I.    *Legal Standard*

"Summary judgment is warranted only upon a showing that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[41]  In ruling on a motion for summary judgment, a court resolves all ambiguities and draws all reasonable factual inferences in favor of the non-moving party.[42]  "In order to defeat a properly supported summary judgment motion, the opposing party must proffer admissible evidence that sets forth specific facts showing a genuinely disputed factual issue that is material under the applicable legal principles."[43]

The claims against Ben-Jacob, each of which was commenced in this Court,[44] are governed by New York law.[45]  Under New York law, claims for fraud must be commenced either "six years from the date the cause of action accrued or two years from the time the plaintiff . . . could with reasonable diligence have discovered it," whichever is later.[46]  Where, as here, fraud is alleged

---

[41]

     *Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transportation Auth.*, 11 F.4th 55, 61 (2d Cir. 2021) (internal quotation marks omitted); *see* Fed. R. Civ. P. 56(a).

[42]

     *See McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006).

[43]

     *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (internal quotation and alteration marks omitted).

[44]

     Dkt 924 at 16 [*In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Litig.*, 2023 WL 8039623, at *6].

[45]

     *See Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002) ("[I]t is well established that in diversity cases state law governs not only the limitations period but also the commencement of the limitations period."); *see also* N.Y. CPLR 202; *Glob. Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528 (1999).

[46]

     N.Y. CPLR 213, subd. 8; *see Guilbert v. Gardner*, 480 F.3d 140, 147 (2d Cir. 2007); *Siler v. Lutheran Soc. Servs. of Metro. N.Y.*, 10 A.D.3d 646, 648, 782 N.Y.S.2d 93 (2d Dep't.

more than six years after a claim accrued, "[t]he burden of establishing that the fraud could not have been discovered" more than two years "before the commencement of the action rests on the plaintiffs."[47]

## II.    The Tolling Agreement

Ben-Jacob's contention that SKAT's actions against him are barred by the terms of the tolling agreement lacks merit. As the Court explained in rejecting a similar argument advanced by other defendants in this MDL, "[t]he best that conceivably might be argued for [this contention] is that the tolling agreement is ambiguous, in which case there would be a genuine issue of material fact that would foreclose the entry of summary judgment."[48] The same is true here. Briefly stated, the tolling agreement, read in the light most favorable to SKAT, applies only to claims that otherwise would have expired during the period in which the agreement was in effect. None of SKAT's claims for which Ben-Jacob seeks summary judgment of dismissal falls into this category.

## III.    2021 Complaint

Ben-Jacob argues in the alternative that the claims asserted in the June 2021 Complaint are untimely under the applicable New York statute of limitations, CPLR Section 213, subd 8. The parties agree that the 2021 Complaint's claims would be untimely under the six-year

---

2004).

As a general matter, parties may shorten a statute of limitations by mutual agreement. *See John J. Kassner & Co. v. City of New York*, 46 N.Y.2d 544, 551, 389 N.E.2d 99, 103 (1979).

[47]

*Siler*, 10 A.D.3d at 658, 782 N.Y.S.2d 93; *accord Mason v. Henry*, 152 N.Y. 529, 539, 46 N.E. 837, 840 (1897).

[48]

Dkt 1069 (Pretrial Order No. 38).

limitations period if it stood alone.  But it does not stand alone.  It is subject to the discovery rule of Section 213, subd. 8.  And the parties disagree over whether the claims nonetheless are timely under that rule.

Under Section 213, subd. 8, a fraud claim is timely, notwithstanding the fact that it is brought more than six years after it accrued, if it is filed within "two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it."[49]  Whether and when a plaintiff 'could with reasonable diligence have discovered' a fraud is a mixed question of law and fact[50] to be determined objectively.[51]  That inquiry "turns on whether the plaintiff was 'possessed of knowledge of facts from which the fraud could be reasonably inferred.'"[52]  Even where the plaintiff does not possess knowledge from which fraud could be inferred, the two-year discovery period may begin if a plaintiff has reason to but does not pursue a reasonable investigation.[53]  In summary, the two-year discovery rule window begins to close when: (A) the

---

[49]    N.Y. CPLR 213, subd. 8.   SKAT may claim the benefit of the discovery rule because the 2021 Complaint's two counts sound in fraud.

[50]    *Trepuk v. Frank*, 44 N.Y.2d 723, 725, 376 N.E.2d 924 (1978); *Seidenfeld v. Zaltz*, 162 A.D.3d 929, 936, 80 N.Y.S.3d 311 (2d Dep't. 2018).

[51]    *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983).

[52]    *Sargiss v. Magarelli*, 12 N.Y.3d 527, 532, 909 N.E.2d 573 (2009) (quoting *Erbe v. Lincoln Rochester Tr. Co.*, 3 N.Y.2d 321, 326, 144 N.E.2d 78 (1957)).

[53]    *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 155 (2d Cir. 2012) (citing *Gutkin v. Siegal*, 85 A.D.3d 687, 688, 926 N.Y.S.2d 485, 486 (1st Dep't. 2011)) (summary judgment for the defendant on a fraud claim should be granted "pursuant to the two-year discovery rule when the alleged facts do establish that a duty of inquiry existed and that an inquiry was not pursued"); *Armstrong*, 699 F.2d at 88 ("[W]here the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth . . . knowledge of the fraud will be imputed to him." (quoting *Higgins v. Crouse*, 147 N.Y. 411, 416, 42

14

plaintiff discovers the fraud, (B) the plaintiff knew facts from which the fraud reasonably could be inferred, or (C) the plaintiff had reason to investigate whether he had been defrauded but failed to do so.

Ben-Jacob argues that SKAT had actual knowledge of the fraud and, in the alternative, that it knew facts from which the fraud could have been inferred, more than two years before it filed the June 2021 Complaint.[54]

### A.    *Whether SKAT Knew of the Fraud*

Ben-Jacob contends that his exclusion from the release in the Maple Point Settlement agreement proves that "SKAT believed it possessed claims against Ben-Jacob arising from his involvement in the Schedule A Plans[]."[55]  This argument is unpersuasive because it relies upon an inference that is tenuous, at best.  It is equally plausible that SKAT excluded Ben-Jacob from the release simply because it knew that he had been involved, albeit in a limit way, in Schedule B Plan claims and did not yet know whether he had been involved with Schedule A Plans or the nature of that involvement.  The reasonableness of this alternative inference dooms Ben-Jacob's contention because all reasonable inferences must be drawn in favor of SKAT, the non-moving party, on this motion for summary judgment.  Even if SKAT excluded Ben-Jacob because it suspected, *but did not know*, the he was involved in fraudulent refund claims made by Schedule A Plans, the Court cannot hold as a matter of law that SKAT knew about the fraud alleged in the 2021 Complaint

---

N.E. 6 (1895)).

[54]

He does not argue that SKAT had a duty of inquiry on which it failed to act.  Dkt 1042 (Ben-Jacob Reply) at 9.

[55]

Dkt 1003 (Ben-Jacob Mem.) at 15.

15

because suspicion falls short of actual knowledge.[56]

    B.    *Whether SKAT Knew Facts From Which the Fraud Reasonably Could Have Been Inferred*

    Ben-Jacob contends in the alternative that "SKAT's own pleadings establish that before June 2019 it had facts suggesting its claims that were first brought in the June 2021 Complaint."[57]  Specifically, he points out that the earlier complaints stated that the allegedly fraudulent tax refund claims comprised a "singular 'fraudulent scheme'" encompassing "over 300 entities" including both Schedule A and Schedule B Plans, that two of these suits were against Ben-Jacob clients concerning both Schedule A and Schedule B Plans, and that SKAT knew that Ben-Jacob served as an Authorized Representative in many Schedule B Plans' refund claims.[58]  These facts, Ben-Jacob argues, "establish that SKAT had knowledge of facts suggest that . . . . [he was] involve[d] with the Schedule A Plans' alleged fraud before June 2019."[59]  In a nutshell, Ben-Jacob argues that SKAT should have inferred his involvement with Schedule A Plans from its knowledge of his involvement with Schedule B Plans.

    Ben-Jacob is not entitled to summary judgment because a jury reasonably could conclude that SKAT could not reasonably have inferred in 2019 the fraud it alleged in 2021.

---

[56]    *See Sargiss*, 12 N.Y.3d at 532, 909 N.E.2d 573 (noting that "knowledge of [a] fraudulent act" is distinct from "suspicion" of that act (quoting *Erbe*, 3 N.Y.2d at 326, 144 N.E.2d 78)).

[57]    Dkt 1003 (Ben-Jacob Mem.) at 16 (emphasis omitted).

[58]    *Id.* at 16–17 (citing Dkt 1002 (56.1 Stmt.) at ¶ 26 (citing *Skatteforvaltningen v. Basalt Ventures LLC Roth 401(K) Plan*, 19-cv-01866, ECF No. 1 (complaint))).

[59]    *Id.* at 19.

### 1.    Ben-Jacob's Motion Proves Too Little

The first problem with Ben-Jacob's argument is that he claims to be entitled to summary judgment only on the basis that SKAT possessed facts in 2019 "*suggesting* [his] involvement" in the fraud first alleged in June 2021.[60] That is not the correct standard.

Section 213, subd. 8's two-year discovery window does not begin to run until "a plaintiff is possessed of knowledge of facts from which fraud could be reasonably inferred."[61] Facts might suggest something that cannot be inferred reasonably because the latter, unlike the former, necessarily relies upon known facts or evidence assumed to be true.[62]

Ben-Jacob's contrary assertion relies on this Court's opinion denying a motion to dismiss of another MDL defendant who likewise argued that an action against him was untimely. There, the Court stated that "the 'proper focus' to determine when the discovery period began is 'not the date of plaintiff's actual or imputed knowledge of the general fraudulent scheme.' Instead, 'the salient question is' when the plaintiff knew 'facts suggesting a *particular defendant's participation*.'"[63] Read in context, it is clear that the Court used the phrase "facts suggesting" solely

---

[60]

    *Id*. at 16 (emphasis added).

[61]

    *Erbe*, 3 N.Y.2d at 326, 165 N.Y.S.2d 107.

[62]

    *Compare suggest*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1963) ["WEBSTER'S THIRD"] ("to put . . . as an idea . . . into the mind[;] "to call or bring to mind"), *with infer,* WEBSTER'S THIRD ("indicates arriving at an opinion or coming to accept a probability on the basis of available evidence"), *and inference*, Merriam-Webster Online Dictionary ("a conclusion or opinion that is formed because of known facts or evidence"); *see generally* Bart Streumer, *Inferential and Non-Inferential Reasoning*, 74 Phil. & Phenomenological Rsch. (2007).

[63]

    Dkt 636 at 6 [*In re Customs & Tax Admin. of the Kingdom of Denmark (SKAT) Tax Refund Scheme Litig.*, No. 18-cv-4833, 2021 WL 2689908, at *2 (S.D.N.Y. June 30, 2021) (alteration marks omitted) (quoting *AE Liquidation Corp. v. Segre*, No. 96-cv-0889 (CSH),

to clarify that the relevant inquiry is whether a plaintiff knew facts from which fraud could be inferred *as to a specific defendant* because "the discovery period may commence with respect to different actors . . . at different times."[64]  This interpretation is confirmed by *AE Liquidation Corporation*, the case from which the Court quoted.[65]  The Court did not purport to alter New York's rule that the discovery period begins when "a plaintiff had knowledge of facts from which the fraud could reasonably be inferred."[66]  "[M]ere suspicion" of fraud does not suffice.[67]

2.    *A Jury Reasonably Could Find That SKAT Could Not Reasonably Have Inferred the Fraud Alleged*

The second problem with Ben-Jacob's argument is that SKAT's knowledge of the connections between the Schedule B Plans and Schedule A Plans and Ben-Jacob's participation in the former did not *require* SKAT to infer Ben-Jacob's participation in the latter.  This is so for three principal reasons.

i.

Ben-Jacob contends that the conduct SKAT alleged in the 2021 Complaint was part

---

2000 WL 204525, at *7 (S.D.N.Y. Feb. 18, 2000))].

[64]

*AE Liquidation Corp.*, 2000 WL 204525, at *7.

[65]

*See id.*, at *4, *7 (stating first that "the focus is on the point at which the plaintiff possessed knowledge of facts from which he could reasonably have inferred the fraud" and second that "the discovery period may commence with respect to different actors in an alleged fraudulent scheme at different times . . . . The salient question is, when did the plaintiff have knowledge of facts suggesting a particular defendant's participation" (internal quotation marks omitted)).

[66]

*Sargiss*, 12 N.Y.3d at 532, 909 N.E.2d 573 (internal quotation marks omitted).

[67]

*Id.*

of a single fraud of which SKAT was aware in 2019.  In support of this notion, he relies primarily on SKAT's allegations in its 2019 complaints that "the acts of all of these plans . . . [were] part of a singular fraudulent scheme."[68]

It is true that SKAT then characterized the alleged fraud as "stem[ming] from *a* fraudulent tax refund scheme," explained that "[t]he essence of *the* fraudulent scheme is that each of over 300 entities" filed fraudulent tax refund claims, and stated that "SKAT reported *the* alleged fraud to Danish" authorities.[69]  But whether SKAT alleged a single fraud or multiple similar frauds cannot turn on a hyper-literal syntactic argument.  The term 'fraud scheme' reasonably can be understood to refer to a category of fraud rather than a specific instance of fraud jointly undertaken.[70]  In other words, the above-quoted allegations, though consistent with a single fraud, are consistent also with SKAT believing that it had been the victim of multiple frauds that deployed a common deceitful stratagem.  Thus, a jury reasonably could agree with SKAT that the 2019 allegations merely "generally describe[d] fraudulent reclaims that SKAT received from all different sources."[71]

---

68

     Dkt 1003 (Ben-Jacob Mem.) at 16 (internal quotation marks omitted).

69

     *Skatteforvaltningen v. Dicot Technologies LLC Roth 401(K) Plan*, 19-cv-01788, ECF No. 1 (complaint) at ¶¶ 2, 3, 8 (emphasis added).

70

     *Cf.* Department of Health and Human Services, Office of Inspector General, Questionable Billing by Community Mental Health Centers (Aug. 20, 2012) ("Sharing beneficiaries is a common fraud scheme and may involve cooperation between managers, physicians, and marketers to solicit beneficiaries or beneficiary Medicare numbers.").

71

     Dkt 1021 (SKAT Opp'n. Mem.) at 17.

     The question of whether SKAT alleged one fraud or multiple frauds is analogous to an issue that arises not infrequently in the criminal context: whether an indictment alleged or the government proved at trial a single conspiracy or multiple independent conspiracies.  The

Charitably read, the 2019 complaints, which perhaps were pled inartfully, alleged that *various* defendant pension plans and their agents and representatives employed similar tactics (*i.e.*, false claims for tax refunds) to scam the same victim (*i.e.*, SKAT) through multiple frauds. There was little evidence, moreover, that Ben-Jacob was involved in the Schedule A Plans' fraud as he was not listed on the Plans' refund applications filed with SKAT. Accordingly, the proof thus far adduced is susceptible to the inference that SKAT was unaware in 2019 of the fraud it alleged in 2021.[72]

### ii.

Second, the nature of the fraud allegations against Ben-Jacob in 2019 and 2021 are sufficiently different that a jury reasonably could find that SKAT could not have inferred the latter from the former even if it knew that the claims at the center of the complaints were part of a single fraud.

Whether a fraud reasonably can be inferred is a fact-specific inquiry that considers the specific nature of the fraud allegations contained in the action challenged as untimely.[73] To be

---

singular/multiple conspiracy inquiry is a holistic one that considers the commonality of participants and the nature and timing of any overt acts. It does not hinge on the use of "conclusory" or "boilerplate" language in an indictment. *United States v. Gabriel*, 920 F. Supp. 498, 504 (S.D.N.Y. 1996), *aff'd*, 125 F.3d 89 (2d Cir. 1997); *see United States v. Johansen*, 56 F.3d 347 (2d Cir. 1995). The same principles apply here.

[72]    *See AE Liquidation Corp.*, 2000 WL 204525, at *4, *7 (facts must "suggest[] a particular defendant's participation").

[73]    *See* Dkt 1003 (Ben-Jacob Mem.) at 16 (noting that the operative inquiry is whether SKAT knew "facts suggesting *its claims* that were first brought in the June 2021 Complaint" (emphasis added)).

sure, plaintiffs need not know "every aspect of the alleged fraudulent scheme"[74] and "[a] new cause of action for fraud does not accrue each time a plaintiff discovers new elements of fraud in a transaction."[75]  But a plaintiff must have facts from which it could infer both the specific defendant's involvement[76] and the specific nature of the fraud he perpetrated.  This latter principle flows from the language of Section 213, subd. 8 — which uses the definite article ("the fraud") rather than the indefinite article ("a fraud") — and the New York Court of Appeals' interpretation thereof.[77]  And it is consistent with a core rationale for the discovery rule: avoiding the "statute of limitations . . . precipitat[ing] groundless or premature suits by requiring plaintiffs to file suit before they can discover with the exercise of reasonable diligence the necessary facts to support their claims."[78]  Last, the principle follows naturally from the rule that notice triggering a duty to investigate must be specific to the fraud alleged.  As the Second Circuit affirmed recently, "[i]n order to provide inquiry notice, 'the triggering data must be such that it relates *directly* to the misrepresentations and omissions the Plaintiffs later allege in their action against the defendants.'"[79]

---

[74]

    *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 427 (2d Cir. 2008).

[75]

    *Sielcken-Schwarz v. Am. Factors*, 265 N.Y. 239, 245, 192 N.E. 307, 310 (1934).

[76]

    *See AE Liquidation Corp.*, 2000 WL 204525, at *7.

[77]

    *See Erbe*, 3 N.Y.2d at 326, 144 N.E.2d at 81 ("[K]nowledge of the facts which aroused plaintiffs' suspicions as to the defendant['s] . . . good faith in [a] prior [and related matter] was not necessarily knowledge of facts from which the alleged fraudulent conspiracy might be reasonably inferred.").

[78]

    *Rothman v. Gregor*, 220 F.3d 81, 97 (2d Cir. 2000) (quoting *Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1202 (10th Cir. 1998)).

[79]

    *Meyer v. Seidel*, 89 F.4th 117, 135 (2d Cir. 2023) (alteration marks omitted) (emphasis omitted) (quoting *Newman v. Warnaco Grp., Inc.*, 335 F.3d 187, 193 (2d Cir. 2003)); *accord*

Having held that a plaintiff must have reason to suspect a defendant of the fraud that ultimately was alleged, the Court considers next whether a jury reasonably could find that SKAT in 2019 was not bound to have inferred the claims it brought in 2021.

The pre-June 2019 claims against Ben-Jacob are a far cry from those filed in 2021. Although they asserted that Ben-Jacob provided the Schedule B claimants "substantial assistance in the fraudulent scheme,"[80] in substance, they alleged that Ben-Jacob played a limited role. Specifically, they alleged that Ben-Jacob enabled Schedule B Plans' claims by acting as their "Authorized Representative" in authorizing payment agents to submit to SKAT tax refund claims on behalf of client plans and by executing powers of attorney.[81]  The complaints made also a number of general allegations against all named defendants, Ben-Jacob among them, including that they "did know or should have known that these arrangements would cause SKAT to make payments to which the [claimants] were not entitled" and that defendants "acted with knowledge, willful blindness, and/or recklessness in submitting claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds."[82]

---

*Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013).

That the same principle applies to the closely related issue of whether, having received notice and investigated a potential fraud, a plaintiff knew facts from which the fraud could be inferred, is apparent because it would be illogical to impose a higher threshold for a duty to investigate a potential fraud than to find that a plaintiff could have inferred the fraud after making a thorough investigation. *Cf. Cohen*, 711 F.3d at 361–62.

[80]

*The Stor Capital Consulting LLC 401K Plan*, No. 18-cv-04434, ECF No. 1 (complaint) at ¶ 9.

[81]

*Id.* at ¶¶ 9, 34, 40; *see also, e.g.*, *Skatteforvaltningen v. Loggerhead Services LLC Roth 401(K) Plan*, No. 19-cv-01806, ECF No. 1.

[82]

*The Stor Capital Consulting LLC 401K Plan*, No. 18-cv-04434, ECF No. 1 (complaint) at ¶¶ 10, 58.

The 2021 Complaint, by contrast, alleges that Ben-Jacob, the only named defendant, was a central and knowing player in a sprawling scheme to defraud SKAT on behalf of many Schedule A Plans.  It alleges that Ben-Jacob designed and executed partnership structures that were "essential" to a far-reaching fraud "conspiracy."[83]  And, for example, it alleges that "Ben-Jacob participated in structuring webs of LLCs, Plans, partnerships, and other U.S. entities . . . to allow the Principals [of Schedule A Plans] to use the Plans to submit refund applications to SKAT purportedly as the owners of the shares and the dividends, but in fact as agents or nominees of the undisclosed Principals and their partnerships."[84]  The 2021 Complaint makes also specific allegations as to Ben-Jacob's *scienter* that were absent from the earlier complaints: "Ben-Jacob knew that the Schedule A Plans' representations that they were the beneficial owners of Danish shares, dividends, and refund application proceeds were false."[85]

The frauds alleged in the 2019 complaints unmistakably are at least arguably different from the 2021 claims.  A jury reasonably could conclude that what SKAT knew before June 2019, as evidenced by the complaints it filed up to that time, would not warrant an inference that Ben-Jacob was involved in — let alone an architect of — the sprawling fraud alleged in 2021.

That SKAT was not reasonably bound to have inferred its 2021 claims against Ben-Jacob before June 2019 is consistent with its assertion that the necessary facts from which such an

---

[83]

    *Id.* at ¶¶ 5, 15, 16, 17, 18, 19, 36, 43.

[84]

    *Id.* at ¶¶ 43, 45.

[85]

    *Id.* at ¶ 48.

inference could have been drawn were shielded by the attorney-client privilege.[86]   According to SKAT, it was not until early 2021 that it received "communications and documents, previously withheld as privileged, that revealed Ben-Jacob's involvement in the Schedule A Plans' fraud that formed the basis for SKAT's allegations in the June 2021 complaint."[87]   It further cites email communications, which, it says, "reveal Ben-Jacob's role in forming partnership agreements from the Schedule A plans."[88]   That Ben-Jacob disputes the salience of this evidence[89] is of no moment at present because factual issues must be resolved in favor of the non-moving party on summary judgment.[90]   Ben-Jacob's evidentiary arguments properly are addressed to the jury.

### iii.

In the alternative to the two grounds stated above, the Court denies the motion for summary judgment because it holds that SKAT is not bound by its 2019 complaints.

Ordinarily, "a party's assertion of fact in a pleading is a judicial admission by which it . . . is bound throughout the course of the proceeding."[91]   But a "court has discretion to 'avoid the

---

[86]

Dkt 1021 (SKAT Opp'n. Mem.) at 19.

[87]

Dkt 1023 (SKAT Resp. to 56.1 Stmt.) at ¶ 4.

[88]

*Id.* (citing Dkt 1022-6).

[89]

Dkt 1042 (Ben-Jacob Reply) at 8–9.

[90]

The Court observes that Ben-Jacob's arguments regarding these communications appear to pertain to other evidence.  For example, he characterizes the evidence as "a memorandum to file" when it appears to be two emails, and he states that it "does not reference Ben-Jacob or partnerships" despite the fact that it expressly is about partnerships and includes Ben-Jacob on the recipient list.  *Compare* Dkt 1042 (Ben-Jacob Reply) at 8–9, *with* Dkt 1022-6.

[91]

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985).

consequence of conclusiveness of an admission,' and . . . 'pleadings must be construed so as to do justice.'"[92]  Thus, in *Moll*, the Court of Appeals refused to hold a plaintiff bound by an assertion in her pleading because the defendant had denied the relevant admission in its answer.  The exercise of discretion was appropriate, the court explained, because the "defendant's answer to [the] complaint [was] also a pleading."[93]  The court continued, if "each side has retreated from its factual pleading to endorse the opposite proposition, . . . it [is] appropriate that neither pleading should be viewed as conclusive against the pleader."[94]

The Court exercises its discretion to hold that SKAT's 2019 allegations are not conclusive because Ben-Jacob denied them in substance in his own pleading.  Specifically, Ben-Jacob "denie[d]" that: (1) "*a* massive fraud was perpetrated on SKAT," (2) he "participat[ed] in or aid[ed] or abett[ed] others in participating in a fraudulent scheme," and (3) he "intentionally, knowingly and/or recklessly made or caused to be made . . . fraudulent statements . . . [to SKAT]."[95]  In sum, it is at least arguable that Ben-Jacob pled that SKAT was not the victim of a single fraud and that he did not defraud SKAT himself.  Thus, the truth of the matters alleged by SKAT in 2019 "remain[] . . . genuine issue[s] of fact to be determined by the jury."[96]  But those "pleaded

---

[92]

    *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 250 (2d Cir. 2024) (quoting first 9 Wigmore, Evidence § 2590 (2023) and second Fed. R. Civ. P 8(e)).

[93]

    *Id.*

[94]

    *Id.* at 252.

[95]

    18-cv-4434, ECF No. 50 (answer) at ¶¶ 2, 51, 56 (emphasis added); *see id*. ¶¶ 3, 9, 34.

[96]

    *Moll*, 94 F.4th at 252.

assertion[s] may be treated as . . . party admission[s] for evidentiary purposes."[97]

* * *

The foregoing should not be understood to suggest that the Court finds no merit in Ben-Jacob's arguments. But "whether a plaintiff is possessed of knowledge of facts from which fraud could be reasonably inferred, such that the statute of limitations begins to run, ordinarily presents a mixed question of law and fact and, where it does not *conclusively* appear that the plaintiffs had knowledge of facts of that nature a complaint should not be dismissed on motion."[98] Because it does not *conclusively* appear that SKAT knew about the fraud alleged in the 2021 Complaint, the question must be left to the jury.

### *Conclusion*

For the foregoing reasons, Ben-Jacob's motion for summary judgment (Dkt 1000) is denied.

SO ORDERED.

Dated:        August 26, 2024

                                                    _____
                                                    Lewis A. Kaplan
                                                    United States District Judge

---

[97]        *Id.*

[98]        *Erbe*, 3 N.Y.2d at 326, 165 N.Y.S.2d 107 (emphasis added).